Marshall, C. J.,
dissenting. It is well settled that upon grounds of public policy testimony of jurors should not be received for the purpose of impeaching their verdict, and I agree that such a rule is both sound and salutary. In a great many cases it has been held that an inquisition into the conduct of the jury during the course of their deliberations in the jury room would be productive of more harm than good; that it would tend to discredit jurors in their own estimation and in the estimation of the public and would destroy their independence. It is equally well settled that even where the jury has not been guilty of any misconduct, and where misconduct is not claimed, the testimony of a small number of the jury should not be received in an attempt to show mistake on the part of the majority of the jury, because of the temptation to unsuccessful parties to tamper with jurors and to avoid the verdict already *130 rendered by permitting a small number of jurors to defeat the action of the larger number. This latter rule must be conceded to be less important than the former one, and yet many valid reasons can be urged for such a rule. The case at bar, however, does- not come within either of those rules. The verdict was originally rendered by ten jurors and nine of the ten have made affidavits that the verdict as rendered does not express their true intentions.
A judgment had originally been entered in favor of plaintiff upon a cognovit note, and upon motion of the defendants and tender of an answer that judgment was suspended and a cross-petition filed praying judgment in defendants’ favor. It clearly appears by the affidavits of the jurors that they believed that the judgment in plaintiff’s favor upon the cognovit would stand and that the jury was to determine the sole question whether defendants were entitled to a verdict upon the cross-petition. Although it was the intention of the jury to merely offset the judgment upon the cognovit by the sum of $250, thereby leaving plaintiff to recover a balance of approximately $200, the effect of the verdict as rendered took away the original judgment upon the cognovit entirely, thereby losing to plaintiff exactly the amount of the suspended judgment.
The foregoing recital is made to show how easy it would be for a jury to misunderstand and how difficult it would be for a court to cause a jury to clearly understand the instruction intended. The jury was not guilty of any misconduct, but on the contrary merely made an honest mistake, and expressed a desire to have the mistake corrected in order that substantial justice may be done. It is not an effort on the part of two or three jurors to *131 show a mistake which is not conceded by the majority, but it is an admission of mistake on the part of nine jurors, a sufficient number to have rendered a verdict, and the tenth juror does not deny the affidavit of the nine, but it appears that the tenth juror has not been seen, nor his affidavit taken by either party.
The majority opinion cites the case of Hulet v. Barnett, 10 Ohio, 459. But that was a ease of impeachment, and an attempt to show misconduct on the part of jurors. The case of Holman v. Riddle, 8 Ohio St., 384, also cited, was a case where two jurors offered affidavits to the effect that they had not properly understood the charge. Judge Swan in the opinion discusses the difficulty of all jurors understanding perfectly all principles of law expounded to them in charges, and points out the impossibility of jurors untrained in the law having in all cases a clear understanding of the legal principles involved, and the danger of disturbing verdicts on such grounds. In the case at bar, however, it is not a question of understanding legal principles; the jury apparently understood the court’s instructions upon the issues tendered upon the cross-petition and also correctly understood that no issue was tendered upon the original petition, and also that the judgment rendered upon the original petition was only suspended, awaiting adjudication of the cross-petition. There is therefore no similarity between the case at bar and the case of Holman v. Riddle.
The rule which does not allow jurors to impeach their verdict applies to the agreement which the jury reached and not to the written paper filed, intended to express that agreement.
*132 It may be observed that the jury is not seeking an opportunity to make a different finding upon the facts presented for determination, but rather that its reported verdict had no relation to the suspended judgment. It is undoubted that jurors frequently misunderstand the issues involved and the legal principles applicable thereto. It is also inevitable that improper influences are sometimes brought to bear in the jury room, or that after a verdict is reported in a close case some of the jurors may want to change the result, or may regret having yielded to the persuasions of other jurors.
None of these things may afterwards be proven by the affidavits of jurors, but I have not found a single respectable authority which denies the right to a new trial where the jurors are unanimous in testifying to an honest mistake, whereby the verdict is made to show other than the true intent.
The case of Kent v. State, 42 Ohio St., 426, is also cited. But that was also a case of alleged misconduct, which courts generally agree is forbidden to be shown by the affidavit of jurors, and which does not in any way resemble the controversy in the instant case. The case of Sargent v. State, 11 Ohio, 472, is discussed, but that was a case where, after the jury had been discharged, it was sought to have it recalled in order to alter and amend a verdict. That case is not in point, because in the instant case it is not sought to alter or amend the verdict, but merely to have the issues submitted to a retrial before another jury. In the opinion in the case of Sargent v. State, supra, it was stated that mistakes ought to be corrected at the time of trial and before the verdict is recorded. It clearly appears, however, from the statement of counsel in the instant *133 case that counsel were not notified when the jury reported the verdict and therefore had no opportunity to know of the mistake until after the verdict was received and filed and the jury discharged and separated.
The doctrine that the testimony of jurors will not be received to impeach their own verdict has its basis in public policy, and rests largely upon the principle of estoppel, and in not permitting a juror to seek to avoid a verdict in which he has participated by showing his own misconduct and that of his fellow jurors. The doctrine is confined to matters of impeachment, and impeachment presupposes misconduct and malfeasance. Impeachment means to call in question, to accuse of wrong, to disparage or discredit. The doctrine has not, except in very few cases and in very few jurisdictions, been extended to errors and mistakes of fact. The great weight of authority is to the effect that while a verdict should not be amended or corrected because it is repudiated by one or more jurors it should nevertheless be held to be sufficient grounds for granting a new trial. To hold that a jury would not be permitted to correct an honest mistake would only be tenable upon the theory that a jury was infallible. Courts do not hesitate to correct their own mistakes and should not stand in the way of a jury desiring to correct its mistakes. "Would it be contended that if by mistake the jury had written the word “plaintiff” in a verdict, when it was their unanimous intent to give the verdict for the defendant, the jury would not be heard to testify that the verdict was for the wrong party? It very frequently happens that both plaintiff and defendant are asking for an affirmative verdict. It would manifestly *134 work a miscarriage of justice for which no possible excuse could be offered to insist that such a mistake could not be shown by the testimony of the only men who had knowledge of it. Or, suppose, in the hurry of making up a verdict, in inserting the amount of the finding, the decimal point should be placed in the wrong position, thereby making the verdict either ten times as much as it should be, or only one-tenth as much. In personal injury eases there is a wide range of appraisement of damages and such a mistake could easily occur. The only just principle in such cases is that the mistake when discovered should constitute grounds for setting the verdict aside and granting a new trial.
The text-books and digests are all in harmony with the proposition that mistakes which are not related to misconduct or wrongdoing should be corrected, and a very large number of such cases could be cited, but for the purpose of this opinion I will only refer to a few, as follows: Little v. Larnabee, 2 Me., 37, 11 Am. Dec., 43; Roberts v. Hughes, 7 M. & W., 399, 151 Eng. Rep. R., 821; Cogan v. Ebden, 1 Burr, 383, 97 Eng. Rep. R., 361; Dalrymple v. Williams, 63 N. Y., 361; Carlson v. Adix, 144 Ia., 653, and Wolfgram v. Schoepke, 123 Wis., 19.
The majority opinion in the instant case amounts to an extension of the rule far beyond its general import. The rule itself is based upon technicality, and it is more in harmony with the progressive spirit of the times to temper the technicality rather than to increase its rigor. I have always firmly believed that if a jury properly understands a case, it will in ninety per cent, of all cases render a fair and just verdict, and I am also of the opinion that *135 a great deal of criticism which has been indulged concerning juries of late years has been caused by the fact that jurors are not given a full opportunity to a clear understanding of their duties. It is necessary that the jury shall not only understand and determine questions of fact, but it is also necessary to apply principles of law thereto in reaching a verdict. There are so many opportunities for honest mistake, entirely separate and apart from any considerations of misconduct or malfeasance, that the courts should be prompt in permitting a retrial where it is clearly shown that an honest mistake has been made.